## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **NAUTILUS INSURANCE COMPANY** | § § § § | |
| **Plaintiff** | § | |
| **VERSUS** | § § § | **CIVIL ACTION NO.** <u>5:20-CV-961</u> |
| **PAUL H. CLEVELAND and DANA S. CLEVELAND** | § § § | |
| **Defendants** | § § | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Nautilus Insurance Company ("Nautilus") files this Complaint for Declaratory Judgment pursuant to 28 U.S.C. §2201(a) and Rule 57 of the Federal Rules of Civil Procedure and seeks a declaratory judgment that it is not obligated to defend or indemnify its named insured, Paul H. Cleveland ("Cleveland"), or Dana S. Cleveland (collectively "Defendants") against claims asserted in an underlying lawsuit, as set forth below.

### INTRODUCTION

1.      Nautilus seeks a judicial determination that it owes no duty to defend or to indemnify its insured, Paul Cleveland, or his wife at the time of the accident, Dana Cleveland, against claims raised in the lawsuit styled, *Stephanie Miller v. Paul H. Cleveland and Dana S. Cleveland*, pending in the 25th District Court of Guadalupe County, Texas, Cause No. 19-0867-CV-A ("Underlying Litigation").

### PARTIES

2.      At all pertinent times, Nautilus was, and still is, a corporation organized under the laws of Arizona with its principal place of business in Arizona.

3.      At all pertinent times, Paul H. Cleveland is a citizen of Texas for purposes of diversity jurisdiction, and he is a resident of La Vernia, Wilson County, Texas, and may be served at  113 Bridgewater, La Vernia, Texas 78121.

4.      At all pertinent times, Dana Cleveland is a citizen of Texas for purposes of diversity jurisdiction, and she is a resident of La Vernia, Wilson County, Texas, and may be served at  113 Bridgewater, La Vernia, Texas 78121.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §1332 because: (1) there is diversity of citizenship among the parties and (2) the matter in controversy exceeds the sum of $75,000, exclusive of interest, attorneys' fees and costs because Defendants are allegedly responsible for damages to Underlying Plaintiff in a sum over $1 million.

6.      Venue is proper in the United States District Court, Western District of Texas, San Antonio Division, pursuant to 28 U.S.C. §1391 because the policy in dispute was issued in this district, all parties are subject to the jurisdiction of this Court, and a substantial part of the events or omissions giving rise to the claims occurred within this judicial district.

## FACTUAL BACKGROUND

*The Accident and Suit*

7.      Stephanie Miller filed suit against Paul and Dana Cleveland in the following litigation: *Stephanie Miller v. Paul H. Cleveland and Dana S. Cleveland*, in the 25th District Court of Guadalupe County, Texas, Cause No. 19-0867-CV-A ("Underlying Litigation").

8.      In the operative petition, the First Amended Petition, Miller ("Underlying Plaintiff" or "Miller") alleges that "On or about August 21, 2018 at approximately 12:44 a.m., Defendant, PAUL H. CLEVELAND was driving his boat recklessly at an unsafe speed, without stern lights or bow lights.

In addition, Defendant, PAUL H. CLEVELAND, was operating the vessel under the influence of drugs and alcohol with a Blood Alcohol level of .13 causing the accident and severe injuries to the Plaintiff."

9.      The Underlying Lawsuit asserts a cause of action of negligence against Cleveland for the following: (1) Distracted driving; (2) In failing to keep a proper lookout prior to the collision in question; (3) In failing to control his boat's speed; (4) In failing to keep his boat under control; (5) In failing to maintain a reasonable speed or failing to control speed of which an ordinarily prudent person would have done under the same or similar circumstances; and (6) Driving the boat in a willful and wanton manner without due regard for the safety of the persons and property, in violations of Tex. Rev. Civ. Stat. Ann. Article 6701d, Section 5I(a), which act constitutes negligence *per se.*

10.     Miller further alleges that Cleveland is liable for negligence *per se* because he violated the following statutory laws: (1) Boating while intoxicated in violation of Texas Penal Code § 49.06; and (2) Intoxication Assault in violation of Texas Penal Code § 49.07.

11.     Miller further asserts the following negligent entrustment cause of action against Dana Cleveland, alleging as an owner directly or by virtue of her ownership of Cleveland Corporation, LLC which owned the vessel operated by Cleveland that she negligently allowed a reckless driver to operate the watercraft.

12.     In the alternative, Miller alleges the boat was berthed at a lake house located at 207 Reily Road, Guadalupe County, Texas.  The lake house was owned by 207 Reily Rd.  LLC, a corporation set up by Cleveland, and in which Dana Cleveland, had an ownership interest by virtue of her community property interest.  Acting as owner of 207 Reily Rd.  LLC, defendant Dana Cleveland allowed the boat to be berthed without the required lights, and negligently permitted the use of the  boat without required lights in violation of Texas Water Safety Act §31.062, which was

3

proximate cause of the accident and injuries.  In addition, Dana Cleveland knew or had reason to know that her husband was likely to use the boat at night  after drinking, and failed to prevent it.

13.     Miller generally seek damages for past and future physical pain and suffering, disfigurement, impairment, medical expenses, lost wages and loss of earning capacity, mental anguish, and pre- and post-judgment interest.

*The Watercraft*

14.     Upon information and belief, Cleveland purchased the boat in either May or June 2018; it was not purchased by Dana Cleveland, 207 Reily Road LLC or Cleveland Corp LLC (to which Dana Cleveland does not and has never had any interest).

15.     Upon further information and belief, Cleveland was the sole owner of the boat on the date of the accident, August 21, 2018.

16.     Upon further information and belief, the subject boat ride was purely a recreational boat ride that was not undertaken in the conduct of  any business Cleveland identified to Nautilus, including, but not limited to, his real estate development company, Cleveland Corp LLC or 207 Reily Road LLC.  Cleveland was asked by either Miller or Dennis Coburn, the third person riding on the boat, to take the boat out for a ride after Miller finished Cleveland's and Coburn's massages.

17.     Upon further information and belief, Cleveland was the sole owner/member of Cleveland Corp LLC.

18.     Upon further information and belief, Cleveland, Tim Murray and Donald Murray are the owners/members of 207 Reily Road LLC.  Dana Cleveland has a minority interest in 207 Reily Road LLC.

*Notice to Nautilus and State Farm's Coverage*

19.     After Paul and Dana Cleveland were served in the Underlying Litigation in April

of 2019, they tendered the suit to Nautilus on April 15, 2019 for defense and indemnity.

20.     In a May 10, 2019 letter to the Nautilus adjuster, Cleveland's personal counsel stated "as you know, we have been retained to represent Paul Cleveland with regard to the above-referenced case (the underlying case) and State Farms' coverage under the above-referenced policy." The referenced policy was the Nautilus policy number, so the reference to State Farm appeared to be an error.

21.     On July 18, 2019, Nautilus advised Cleveland and Dana Cleveland by letter of the coverage issues existing for the claims asserted in the Underlying Lawsuit, a copy of which is attached hereto as Exhibit "A". Nautilus assumed the defense of both persons in the matter and requested they put any other insurer on notice of this claim, and the defense of the case proceeded.

22.     After receiving a December 19, 2019 *Stowers* demand (directed to defense counsel retained by Nautilus as well as Defendants' personal counsel), which demanded payment of "all applicable policy limits," Nautilus investigated whether other insurance existed.

23.     Nautilus sent a reservation of rights letter on January 7, 2020, asking about any other policies that might respond to the Underlying Litigation, including any State Farm policies, given the earlier reference to State Farm in the May 10, 2019 letter from personal counsel.

24.     Nautilus continued its investigation, including numerous communications with the Defendants' personal counsel, in the effort to discover the existence of other available insurance, including a call on January 21, 2020.

25.     Miller sent a revised and new *Stowers* demand dated February 24, 2020, and it demanded payment of $999,500, directed to both defense counsel hired by Nautilus as well as the Defendants' personal counsel.

26.     Nonetheless, Nautilus sent the demand to Defendants' personal counsel on March

2, 2020, and requested again that he confirm the various details discussed during a January 21, 2020 call, including whether there was State Farm coverage and whether Cleveland's company, Cleveland Corp LLC, had any other coverage.

27.     Defendants' counsel responded in a March 18, 2020 letter that Cleveland "did not have any other insurance which has been determined to provide coverage for the occurrence covered by Nautilus," and that counsel did "not know to which State Farm Policy you refer in your Letter and therefore cannot provide it.  I am aware of no other policies which provide coverage for the claims covered by Nautilus."

28.     Once again asking if Cleveland or counsel had "a policy covering the boat at issue in the subject accident and/or homeowners' or renters' insurance" and further requested that Cleveland provide these policies, any tenders in relation to these policies, and the carriers' responses, Nautilus sent a letter on April 6, 2020.

29.     It was only after this letter that Defendants' personal counsel responded on April 13, 2020 that there were in fact three State Farm policies.

30.     In response to an April 17, 2020 follow-up request for the umbrella policy (the only policy counsel advised they had) and any tender letters, Defendants' personal counsel finally provided the State Farm umbrella policy and an April 15, 2020 tender letter to State Farm under a State Farm homeowners' and umbrella policy.

31.     Nautilus also tendered the Underlying Litigation to State Farm on May 18, 2020 for participation in the defense and for indemnity.

32.     State Farm acknowledged receipt of the notice and made Nautilus aware that Cleveland had a total of six policies, including the following four potentially responsive policies:

    •      Homeowners Policy no. 83-B3-V641-2 (5/22/18-5/22/19) for 113
           Bridgewater Drive ($500K liability limit)

- Homeowners Policy no. 83-NH-4400-4 (1/23/18-1/23/19) for 121 Westfield Ranch ($500K liability limit)
- Renters Policy no. 83-C1-K976-6 (5/16/18-5/16/19) for 207 Reiley Road ($1M liability limit)
- Umbrella Policy no. 83-BC-U027-9 (5/15/18-5/15/19) ($2M liability limit)

Two other policies were provided (a contractor's policy and a rental dwelling policy) but neither are implicated here.

33.     Upon information and belief, Cleveland gave State Farm notice soon after the accident and then again after the Underlying Litigation was filed but requested State Farm not open an active claim file for the Underlying Litigation.

34.     The Underlying Litigation is currently pending.

## THE POLICY

35.     Nautilus issued Policy No. NN888678 ("Policy") to Cleveland for the period June 19, 2018 – June 19, 2019, a true and correct copy of which is attached as Exhibit "B."

36.     The Policy includes Commercial General Liability Coverage with limits of $1 million each occurrence / $2 million general aggregate, in accordance with the terms, exclusions, limitations, definitions, and conditions stated in the Policy.

37.     The Policy's insuring agreement provides coverage under the standard Commercial General Liability Coverage Form (form CG 00 01 04 13). Coverage provides, in part, as follows:

SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  Insuring Agreement

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does

not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim
or "suit" that may result.
(Exhibit B at NIC_0010)

38.     The Policy's Declarations provide the following in the Business Description and

Location of Premises section (at Exhibit B at NIC_0009):

```
BUSINESS DESCRIPTION AND LOCATION OF PREMISES
BUSINESS DESCRIPTION: REAL ESTATE DEVELOPMENT
LOCATION OF ALL PREMISES YOU OWN, RENT, OR OCCUPY:     ☐ Location address is same as mailing address.
  1. WESTFIELD RANCH ROAD/SUBDIVISION NEAR CTY RDS 342 & 337 BET HWY 87 & FM 539
     LA VERNIA          TX 78121-
  2. WESTFIELD RANCH SUBDIVISION
     LA VERNIA          TX 78121-
  Additional locations (if any) will be shown on form S170, Commercial General Liability Coverage Part Declarations
  Extension.
LOCATION OF JOB SITE   (If Designated Projects are to be Scheduled):
```

39.     The Policy's Declarations also include the following Classifications: Code 49451

– Vacant Land – Rural. (Exhibit B at NIC_0009)

40.     The Policy designates Cleveland as an "Individual" on the Declarations.  In the

"Who Is An Insured" section of the Policy, it provides as follows for individuals designated as

named insureds:

> Section II- WHO IS AN INSURED
>
> 1.  If you are designated in the Declarations as:
>
>> a.  An individual, you and your spouse are insureds, but only with respect
>>     to the conduct of a business of which you are the sole owner.
>
> * * *
>
> (Exhibit B at NIC_0018)

41.     The Policy's "Who Is An Insured" section also provides:

> No person or organization is an insured with respect to the conduct of any current
> or past partnership, joint venture or limited liability company that is not shown as
> a Named Insured in the Declarations.
> (Exhibit B at NIC_0019)

PD.29509802.1

42.     Relevant Definitions in the Policy applicable to the coverage issues presented here include the following:        3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time; 13.    "Occurrence"    means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. (Exhibit B at NIC_0022 and NIC_0024)

43.     The Policy also includes, via endorsement called Exclusion - Unmanned Aircraft ("Watercraft Exclusion"), the following exclusion related to watercrafts which amends Exclusion 2.g. in the Policy and states in relevant part:

> A.  Exclusion 2
> This insurance does not apply to:
>
> g. Aircraft, Auto or Watercraft
>
>      ***
>
> (2) Aircraft (Other Than Unmanned Aircraft), Auto or Watercraft
>
> "Bodily injury" or "property damage" arising out of ownership, maintenance, use or entrustment to others of any aircraft (other than unmanned aircraft), "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".
>
> This Paragraph g.(2) applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment ot others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft that is owner or operated by or rented or loaned to any insured.
>
> This Paragraph g.(2) does not apply to:
>
>> (a) A watercraft while ashore on premises you own or rent;
>> (b) A watercraft you do not own that is:
>>> (i)     Less than 26 feet long; and
>>> (ii)    Not being used to carry persons or property for a charge;

* * *

(Exhibit B at NIC_0028)

44.     The Policy provides in the Conditions, Subpart 2(c): Duties In The Event Of

Occurrence, Offense, Claim Or Suit:

> (1) Immediately send us copies of any demands, notices, summonses, or legal paper received in connection with the claim or "suit",
> (2) Authorize us to obtain records and other information,
> (3) cooperate with us in the investigation or settlement of the claim or defense against the "suit",
> (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.
> (Exhibit B at NIC_0020)

45.     And the Policy provides in the Conditions, Subpart 8: Transfer of Rights Of

Recovery Against Others To Us, which states:

> If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those right to us and help us enforce them.
> (Exhibit B at NIC_0022)

### COUNT I - DECLARATORY JUDGMENT: DEFENSE & INDEMNITY

46.     Nautilus adopts and incorporates by reference the allegations set forth in the

preceding paragraphs above as though completely and fully set forth herein.

47.     There is an actual, present, and existing controversy between Nautilus and

Defendants regarding the applicable coverage under the Policy in connection with the claims

presented in the Underlying Lawsuit.

48.     Based upon any facts that are pleaded and those that can be adduced or determined

in the Underlying Lawsuit, Nautilus has no duty to defend or indemnify Defendants.

49.     Nautilus contends that Miller's injuries arising out of the August 21, 2018 boat accident described in the Underlying Litigation are not covered by the Policy.

50.     As per the Policy's Business Description, the Policy covers Cleveland for "Real Estate Development."  This is further supported by the two scheduled properties on the Policy, located in the Westfield Ranch subdivision of La Vernia, Texas, which, upon information and belief, Cleveland was holding for future development (via Cleveland Corp LLC).

51.     Additionally, the Policy's Classifications (upon which premiums are based) are for "Vacant Land – Rural."

52.     Cleveland's insured status, as an Individual, is only with respect to the "conduct of a business of which you [Paul Cleveland] are the sole owner."  Cleveland solely owns Cleveland Corp LLC.

53.     Applying these Policy terms to the Underlying Litigation, the accident and claims arise out of a purely recreational boat ride.

54.     Cleveland was not conducting Cleveland Corp LLC business activity when he was driving the boat on August 21, 2018, nor did his conduct involve the: (1) the Real Estate Development Business Description; (2) the scheduled Westfield Ranch properties on the Policy; or (3) the "Vacant Land" Classifications on the Policy.  Thus, his liability does not arise out of "the conduct of a business of which [he is] the sole owner," as required for insured status.

55.     Further, Cleveland was the owner of the boat on August 21, 2018.  Thus, the Exclusion - Unmanned Aircraft Endorsement applies and provides that the Policy does not apply to "'bodily injury'…arising out of the ownership, maintenance, use or entrustment of others of any…watercraft owned or operated by or rented or loaned to any insured."

56.     Dana Cleveland was married to Paul Cleveland at the time of the accident and would be afforded insured status as a spouse.

57.     Based on the allegations of the Underlying Litigation, as applied to the Policy's terms, Nautilus submits it owes no duty to defend either Paul Cleveland or Dana S. Cleveland against the claims asserted.

58.     Because the duty to defend is precluded based on the above provisions, and because the same reasons that negate the duty to defend negate any possibility that indemnity could be owed, Nautilus also seeks a judgment that it does not owe a duty to indemnify Defendants under the Policy, and otherwise also submits that even if not determined based on the pleadings, that the actual facts that could be determined in the Underlying Litigation do not support that indemnity is owed.

### COUNT II – DECLARATORY JUDGMENT:<br>POLICY CONDITIONS

59.     Nautilus repeats, restates and re-alleges the allegations in each of the above paragraphs as if fully set forth herein.

60.     Nautilus seeks a declaration of the parties' rights and obligations under the Policy, and the Court's making such a declaration will confer certainty on the parties with respect to their rights and obligations under the Policy, as an actual, present and existing controversy has arisen with respect to the rights and obligations of the parties under the Policy.

61.     The Policy's Conditions section requires that Defendants "must cooperate with [Nautilus] in the investigation or settlement of the claim or defense against the 'suit'."

62.     The Policy's Conditions section further provides that "if the insured has rights to recover all or part of any payment we have made under the Coverage Part, those rights are transferred to us [Nautilus].  The insured must do nothing after the loss to impair them.  At our

[Nautilus'] request, the insured will bring 'suit' or transfer those rights to us [Nautilus] and help us enforce them."

63.     Nautilus seeks a declaration that the two provisions referenced immediately above require an insured to cooperate with Nautilus when it asks whether there are any other policies which may respond to the loss (i.e., "other insurance"), and that if such other insurance exists, the insured is required to furnish same to Nautilus so that Nautilus ensures it has preserved its contribution and equitable/contractual subrogation claims against any other insurance which may provide coverage for the subject loss.

64.     Nautilus further seeks a declaration that an insured who not only fails to provide other insurance information, but conceals the information on other insurance and discourages other insurers from participating, is considered in breach of the Policy's terms, entitling Nautilus to all actual and consequential damages flowing from the breach (here, including, but not limited to, the defense costs that Nautilus paid not knowing that other coverage was responsive to this claim and owed defense costs).

65.     In addition to the foregoing provisions, Nautilus pleads all other conditions, terms, warranties, limits, definitions and exclusions of the Policy which may be found to be applicable as Nautilus investigation of this claim continues, and reserves the right to amend its Declaratory Judgment Claim.

**COUNT III – BREACH OF CONTRACT**

66.     Nautilus repeats, restates and re-alleges the allegations in each of the above paragraphs as if fully set forth herein.

67.     The Policy's Conditions require that Defendants "must cooperate with us in the investigation or settlement of the claim or defense against the 'suit'."

68.    The Policy's Conditions further provides that "if the insured has rights to recover all or part of any payment we have made under the Coverage Part, those rights are transferred to us.  The insured must do nothing after the loss to impair them.  At our request, the insured will bring 'suit' or transfer those rights to us and help us enforce them."

69.    As noted above, Nautilus requested on various occasions that Defendants provide any  information as to any other insurance that could respond to the Underlying Litigation, including any policies from State Farm. Instead of immediately providing the State Farm policies to Nautilus, Defendants' counsel gave inconsistent statements on whether the State Farm policies even existed, finally conceding several months later that they did in fact exist.

70.    Nautilus has been made aware that Cleveland tendered the claim and Underlying Litigation to State Farm soon after the August 21, 2018 boat accident happened, and again after suit was filed, but requested State Farm not to open a claim.

71.    Defendants' request to State Farm not to open a claim, combined with their continued resistance to provide the State Farm information to Nautilus, in spite of repeated requests, constitutes a breach of the Policy Conditions referenced above.

72.    Nautilus seeks all damages as are applicable under the law, including actual damages and consequential damages as are allowed by law.

73.    Pursuant to Tex. Civ. Prac. & Rem Code 38.001, Nautilus also seek recovery of its reasonable attorney's fees and costs.

74.    In addition to the foregoing provisions, Nautilus pleads all other conditions, terms, warranties, limits, definitions, and exclusions of the Policy, which also may be found to be applicable as Nautilus' investigation of this matter continues, and it reserves the right to amend its Complaint for Declaratory Judgment.

14

WHEREFORE, Plaintiff Nautilus  Insurance Company respectfully prays:

a.   That Defendants be cited to answer and appear;

b.   That Nautilus has no obligation under the Policy to defend Defendants Paul Cleveland and Dana Cleveland in the Underlying Lawsuit and that it be allowed to discontinue its defense of both in the Underlying Lawsuit;

c.   That Nautilus has no obligation under the Policy to indemnify Paul Cleveland and Dana Cleveland against the claims asserted in the Underlying Lawsuit;

d.   That Defendants be found in breach of the Policy, and that Nautilus is therefore entitled to recover all damages as allowed by law, and

e.   That this Court grant such further and different relief as may be appropriate to accomplish justice and equity among the parties.

Respectfully submitted,

**PHELPS DUNBAR LLP**


BY:   */s/ Mary Cazes Greene*
Mary "Amy" Cazes Greene
TBN 24005647
One Allen Center
500 Dallas Street • 13th Floor
Houston, Texas 77002
Telephone: (713) 626-1386
Telecopier: (713) 626-1388
Email: greenea@phelps.com
**ATTORNEY FOR PLAINTIFF**
**NAUTILUS NSURANCE COMPANY**